**NEW YORK FIRE INS. CO. v. REED et al.**

**No. 5093.**

Court of Civil Appeals of Texas. Amarillo.

Dec. 18, 1939.

Rehearing Denied Feb. 19, 1940.

E. L. Klett, of Lubbock, for appellant.

Crenshaw & Dupree and James H. Milam, all of Lubbock, for appellees.

FOLLEY, Justice.

This is an appeal from a judgment in favor of the appellees, Mrs. Emma Jones Reed and her husband, G. W. Reed, against the appellant, New York Fire Insurance Company, upon a fire insurance policy dated May 13, 1935, in the sum of $1,000 issued by the appellant upon a farm house situated in Dickens County, Texas. At the time of the issuance of the policy the property insured belonged to R. E. Jones, son of the appellee, Mrs. Emma Jones Reed. The insurance was for a period of five years beginning May 7, 1935. The insurance was procured by Jones through L. D. Casey who as agent was engaged in the insurance business in Lubbock, Texas, representing several insurance companies. The premium on the five year policy was $65.50. Of this amount Jones paid Casey the sum of $13.-10 in cash and executed two notes each in the sum of $26.20, the first due January 7, 1936, and the second November 7, 1936. The notes were payable to the appellant at the office of its general agents, Floyd West & Company, a partnership, of Dallas, Texas.

On February 21, 1936, R. E. Jones conveyed the property insured to his mother, Mrs. Emma Jones Reed, she being at such time a widow by the name of Mrs. Emma Jones, but who, before the filing of this suit, was married to G. W. Reed. It was agreed between R. E. Jones and his mother that the son should pay the balance due upon the two insurance notes and that he would have the insurance on the house transferred to his mother. R. E. Jones went to see Casey some time in May, 1936, told him of the conveyance of the property and that he wanted the insurance transferred over to his mother. Mr. Casey replied, "All right". After the conveyance of the property Jones continued to make payments to Casey upon the two notes. The last payment was made December 31, 1936, in the sum of $18.-64, which paid the balance due upon the indebtedness for the premium. At such time Jones informed Casey that he had not received any notice from the insurance company in regard to the transfer of the insurance to his mother and asked Casey if the latter had notified the com-

pany of the transfer. Casey replied that he had "let it slip his memory" but that he would notify the company then. Not until a month later did Casey write to the Dallas agents of the company in regard to the matter and even then he did not inform them that the property had been sold. By his letter dated January 29, 1937, he remitted to Floyd West & Company the $18.64 collected by him from Jones on December 31, 1936. In such letter Casey stated that Jones had asked for a transfer of the policy to his mother and that Jones "would appreciate this being done soon", but no reason was given in the letter as to why Jones desired a transfer of the policy.

On January 30, 1937, the dwelling house originally insured was totally destroyed by fire. On this same day the testimony shows that Floyd West & Company received the letter from Casey of the date of January 29, 1937, with the remittance and request for transfer as stated. The testimony from the witnesses of the appellant was to the effect that Floyd West & Company did not receive notice of the loss until February 3, 1937, at which time no transfer of the policy had been made by Floyd West & Company from R. E. Jones to Mrs. Emma Jones Reed.

The appellant denied liability upon the policy whereupon this suit was filed by the appellees. They alleged the issuance of the policy; the transactions above mentioned with regard to the property; the dealings between Casey and Jones with reference to the policy; the destruction of the property by fire; and asked for judgment against the appellant for the full amount of the policy. The appellant denied liability on the ground that the policy to R. E. Jones was never transferred and assigned to Mrs. Reed and that Casey, its local agent at Lubbock, was without authority to bind the company in regard to the transfer of the policy. By supplemental petition the appellees alleged that L. D. Casey was an authorized agent of the appellant; that he agreed to transfer the policy while acting within the real or apparent scope of his authority; that the acts of L. D. Casey as above stated were binding upon the company; and that the appellant was estopped by reason of such conduct to declare the policy void. The cause was tried before the court without a jury and judgment was rendered for the appellees.

The policy contained a stipulation as follows:

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions, printed on pages two (2) and three (3) hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this Company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

"In witness whereof, This Company has executed and attested these presents but this policy shall not be valid unless countersigned by the duly authorized Agent of the Company at Dallas, Texas, nor shall this policy, or any endorsement written hereon or attached hereto, of any kind, be valid until countersigned by Floyd West & Co., General Agents, who alone shall have the power or authority to waive or alter any of the terms or conditions of this policy, or to make or attach endorsements hereon."

Page two of the policy contained a provision to the effect that it should be void "if any change, other than the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured or otherwise; * * * *."

The appellant asserts that under the above quoted provisions of the policy only Floyd West & Company was authorized to waive or alter the terms or conditions of the policy and therefore L. D. Casey was without authority to bind the company upon the transfer of the policy. To support its contention in this respect the appellant relies chiefly upon the case of

Home Ins. Co. of New York v. Lake Dallas Gin Company et al., 127 Tex. 479, 93 S.W.2d 388, which case upon first impression seems to fully support appellant's position. However, the policies involved in that case were written in 1930 which was before the 1931 enactment of article 5062a, Vernon's Ann.Civ.Statutes. This 1931 act, which was amended in 1935, authorizes fire insurance companies to appoint two classes of agents, "local recording agents" and "solicitors". From this act we quote such portions as we deem pertinent to this controversy, as follows:.

"Sec. 2. By the term 'Local Recording Agent' is meant a person or firm engaged in soliciting and writing insurance, being authorized by an Insurance Company or Insurance Carrier, including Fidelity and Surety Companies, to solicit business and to write, sign, execute and deliver policies of insurance, and to bind companies on insurance risks, and who maintain an office and a record of such business and the transactions which are involved, who collect premiums on such business and otherwise perform the customary duties of a Local Recording Agent representing an Insurance Carrier in its relation with the public.

"By the term 'Solicitor' is meant a person officing with, and engaged in, soliciting insurance on behalf of a Local Recording Agent, who does not sign and execute policies of insurance, and who does not maintain company records of such transactions. This shall not be construed to make a Solicitor of a Local Recording Agent who places business of a class which the rules of the company or carrier require to be placed on application or to be written in a supervisory office. * * *

"Sec. 3. When any person or firm shall desire to engage in business as a Local Recording Agent for an Insurance Company or Insurance Carrier, he shall make application for a license to the Board of Insurance Commissioners, in such form as the Board may require, and such license may be issued by said Board in the form prepared by it when he shall be found of good character and good reputation. * *

"Sec. 6. After a person or firm shall have been granted a license as Local Recording Agent in this State, he shall be authorized to act as such Local Recording Agent only after and while having been authorized so to do by an Insurance Carrier or Carriers, having a permit to do business in this State, and when so authorized each Company or Carrier or its General and/or State and/or Special Agent making the appointment shall immediately notify the Board of Insurance Commissioners in such form as the Board may require, of the appointment, and such person or firm shall be presumed to be the agent for such company in this State until such company or its General and/or State and/or Special Agent shall have delivered written notice to the Board of Insurance Commissioners that such appointment has been withdrawn."

In the instant case the evidence shows that L. D. Casey was duly appointed a recording agent by the Board of Insurance Commissioners of the State of Texas on October 23, 1931, and was issued License No. 1215 as such recording agent. The evidence also shows that the appellant appointed L. D. Casey as its recording agent and the certificate of appointment as certified was approved by the Chairman of the Board of Insurance Commissioners on February 28, 1935. It will be noted in our quotation of this instrument below that the purported date of the appointment is indicated in the statement of facts herein as "2/26/36", however, we assume this to be a typographical error and that it was meant for "2/26/35", as such instrument could not have been approved a year before it was filed. The instrument in question is as follows:

"License No. 1215

"Notice of Appointment of Recording Agent

"L. D. Casey, Lubbock, Texas. (Agent or Agency Names)

Persons Comprising Agency; L. D. Casey.

"State of Texas.

"Board of Insurance Commissioners: The New York Eqt. Dept. of the Insurance Company of New York Fire Ins. Co. of New York hereby certifies that the above named person or persons is-are bona fide residents of the State of Texas, and is-are qualified to act as Recording agent, and is-are not disqualified under the laws of the State of Texas to act as Recording Agent for this or any other insurance company licensed in said State, is a reliable individual of good character and reputation and is hereby appointed agent for the transaction of its authorized business of insurance in Texas under its

said permit until such authority is revoked or otherwise terminated. ·

"Date 2/26/36

"New York Eqt. Dept. of the New York Fire Ins. Co. of New York.

"Approved Feb. 28, 1935

"R. L. Daniel, Chairman Board of Insurance Commissioners"

The appellant admitted in the trial of the case that the authority conferred by the above instrument had not been revoked prior to the time of the fire except as it might have been modified by the insurance contract between the insured and the appellant.

Under the above facts it is our opinion that the Lake Dallas Gin case, supra, is not decisive of the instant case. In that case when the policies in question were issued there was no statutory existence in this state of the representative known as "local recording agent", and so far as the opinion reveals no such authority as is implied by the statute or the certificate of appointment herein was conferred upon the local agent in that case. The only reference made in the opinion in that case as to the status of the local agent was that he was a soliciting agent who did not have the authority to issue a policy on a cotton gin, the subject of the insurance therein. Century Ins. Co., Limited, v. First Nat. Bank of Hughes Springs, Tex. et al., 5 Cir., 102 F.2d 726. In this connection the appellant in the case before us asserts that although Casey was a recording agent duly and legally appointed by the insurance company under the authority of the State of Texas, he did not have the authority to issue or transfer a policy upon rural property and that by the terms of the policy itself applications for such contracts or transfers were required to be submitted to the office of Floyd West & Company for approval before becoming effective. In support of this contention the appellant offered the deposition testimony of two members of the Floyd West & Company partnership who testified that Casey did not have the authority to issue or transfer such a policy but that such authority was only possessed by Floyd West & Company.

In reply to this contention the appellees rely upon the language of the statute above quoted and upon the certificate wherein Casey was appointed recording agent by the appellant "for the transaction of its authorized business of insurance in Texas under its said permit until such authority is revoked or otherwise terminated". In support of their position in this respect the appellees cite the case of Home Ins. Co. of New York v. Roberts et al., 129 Tex. 178, 100 S.W.2d 91, 93. In that case Doak, the local agent, was duly appointed a "local recording agent" in conformity with the provisions of article 5062a, supra. He represented several insurance companies as did Casey in the case before us. The policy in that case, as similarly in this case, provided that it should be valid only when signed by C. C. Byers, agent at Cleburne, Texas. The policy also contained a provision identical with the one in the instant case with reference to the change in ownership of the property. The recording agent in the Roberts case was advised of a conveyance of the property insured and he assured Roberts, the purchaser, that the latter would be protected under the policy pending the moving of the parties involved. Before the property was delivered to Roberts it was destroyed by fire. The insurance carrier denied the authority of Doak to bind the company. Under such circumstances the Commission of Appeals said:

"It will be noted that Doak was appointed by the company itself 'agent for the transaction of its authorized business of insurance in Texas'; that appointment was in effect and not revoked or otherwise terminated, at the time of the transactions herein referred to. He had the authority to speak and act for the company, and transact all the insurance business of the company which it was authorized to transact under its permit from the state.

\* \* \*

"It is now well settled in Texas that a provision in an insurance policy that no condition or stipulation shall be waived except by a written indorsement attached to the policy is ineffectual to prevent a parol waiver of such provisions and conditions by an authorized agent acting within the scope of his authority. Morrison v. Insurance Co., 69 Tex. 353, 6 S.W. 605, 5 Am.St.Rep. 63; Wagner & Chabot v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S.W. 569; Niagara Ins. Co. v. Lee, 73 Tex. 641, 11 S.W. 1024. These cases are based on the proposition that an insurance corporation cannot thus limit its power subsequently to contract in any lawful manner by and through its authorized agents acting within the scope of their authority. For the same reason, a stipula-

tion in the policy that only certain officers and agents named therein shall have the power to waive the conditions of the policy does not preclude an authorized agent, other than the officials named, acting within the scope of his authority, from effecting such a waiver. United States Fidelity & Guaranty Co. v. Taylor (Tex.Civ.App.) 11 S.W.(2d) 340 (writ ref.)."

■■ From the above holding it is our opinion that Casey was invested with the authority to bind the appellant upon the transfer of the policy herein. His appointment by the company was nothing short of a power of attorney authorizing him to transact the authorized business of insurance of the company in the State of Texas. As such an agent we think he was empowered to effect a parol waiver of the conditions of the policy with reference to the change of title of the property insured. The testimony of the appellant's witnesses to the effect that he was not so authorized, at most, merely presented an issue of fact for the court to determine, which issue has been resolved against the appellant by the judgment of the trial court. In making the appointment under article 5062a the appellant placed its mantle of authority upon Casey's shoulders and, in effect, held him out to the public as an agent authorized to "write, sign, execute and deliver policies of insurance" and to bind the company "on insurance risks", the terms of the policy to the contrary notwithstanding. Under his appointment Casey had as much authority with reference to insurance risks as any that could possibly have been bestowed by the appellant upon Floyd West & Company. As was said in the Roberts case, Casey "had the authority to speak and act for the company, and transact all the insurance business of the company which it was authorized to transact under its permit from the state". What more authority could Floyd West & Company have had? We think it evident that in enacting article 5062a the Legislature no doubt had in mind just such circumstances as existed in the instant case. From the uncontroverted testimony Casey was informed of the sale of the property for about nine months before the fire. He accepted money upon the premiums thereafter and the appellant received and retained this money and has not yet tendered its return. The appellees relied upon the statements and promises of Casey that the matter of transferring the insurance would be attended to. For

nine months after receiving the information of the sale of the property and the request for the transfer of the policy, the recording agent failed to notify the appellant or its general agents of such facts. Knowing no doubt that such circumstances as these oft-times worked undue hardships upon an unsuspectnig public, the Legislature enacted a law whereby the public, in dealing with fire insurance agents, might have some statutory assurance of the agent's authority to bind the company. The prospective purchaser of such insurance may now ascertain this assurance by an inspection of the agent's authority from the insurance carrier under the seal of the State of Texas. He may thus obtain information as to whether the agent is a mere solicitor unauthorized to bind the company or a recording agent with full authority to do so. We therefore think Casey's conduct herein was binding upon the company and that there was no error in the judgment of the trial court. Carolina Ins. Co. v. Christopher, 130 Tex. 245, 106 S.W.2d 138, 109 S.W. 2d 467.

The judgment is affirmed.